IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

CHARLES E. NELSON,

        Plaintiff,

v.                                    CIVIL ACTION NO. 5:05-cv-00429

MICHAEL H. HOLLAND, et al.,

        Defendants.

**MEMORANDUM OPINION**

Charles E. Nelson ("plaintiff") brings this action against the Trustees of the United Mine Workers of America 1974 Pension and Trust Plan ("Plan") challenging the trustees' denial of his application for disability benefits under the Employee Retirement Income Security Act of 1974 ("ERISA") 29 U.S.C. § 1132 et seq. Jurisdiction in present under 21 U.S.C. § 1331 and 29 U.S.C. § 1001 (2000) et seq.[1]

Both parties have moved for summary judgment. [Docket Nos. 18 and 22]. Plaintiff asserts that he is entitled to judgment as a matter of law because he satisfies all three eligibility requirements to receive disability benefits under the Plan. Defendants counter that plaintiff's medical records do not establish a casual link between his Social Security Disability Award and a

---

[1] Section 502(e) of ERISA grants exclusive jurisdiction to the district courts to hear "civil actions under this subchapter brought by the Secretary [of Labor] or by a participant, beneficiary, [or] fiduciary." 29 U.S.C. § 1132(e)(1). Similarly, § 502(a)(3) provides that a participant, beneficiary, or fiduciary has standing to enforce any ERISA provision. § 1132 (a)(3)(iii). The plaintiff is a plan beneficiary and thus has standing to seek enforcement of his alleged right to receive disability benefits.

1986 mine accident, or that he was involved in a qualifying mine accident in July 1989, which negates his eligibility to receive benefits under the Plan. In addition, defendants assert that they are entitled to judgment as a matter of law because plaintiff has failed to produce evidence demonstrating that the trustees' decision to deny benefits was an abuse of their discretion.

## I. FACTS

On November 10, 1986, while working as a shuttle car operator for Peabody Coal Company, plaintiff slipped and fell on a rock while carrying a ten gallon cylinder of oil (hereinafter "1986 injury" or "1986 mine accident") [Docket No. 21 at 39, 41, 63, 375]. Plaintiff sought immediate medical treatment. Dr. James Midkiff, a chiropractor, diagnosed plaintiff with an "acute lumbosacral sprain/strain with an accompanying L5 subluxation complex."[2] [Docket No. 21 at 39-40]. Plaintiff was treated by Dr. Midkiff for his injury and eventually returned to work on January 19, 1987. [Docket No. 21 at 41, 52]. On July 23, 1987, approximately six months later, plaintiff returned to Dr. Midkiff complaining of "constant lower back pain, which radiated bilaterally into his hips and which was exacerbated by prolonged sitting, bending or lifting." [Docket No. 21 at 46].

Plaintiff resumed treatment with Dr. Midkiff and was referred to a neurosurgeon, Dr. C.Y. Amores. Dr. Amores determined that as a result of the fall, plaintiff had sustained "a significant amount of herniation of his L5-S1" disc and recommended surgery to remove the L5-S1 posterior arch. [See Docket No. 21 at 48, 63]. On August 27, 1987, Dr. Amores performed surgery to remove plaintiff's herniated L5-S1 disc (on the right side). [See Docket No. 21 at 48, 51]. Plaintiff was not medically released to return to work until November 1987. [Docket No. 21 at 58].

---

[2] A subluxation is defined as a partial dislocation. [Docket No. 23 p. 3 n.3]

In January 1988, Dr. Midkiff reported to the West Virginia Workers' Compensation Fund ("WCF") that plaintiff continued to have lower back discomfort and sought authorization to provide plaintiff with additional treatments. [See Docket No. 21 at 59]. Dr. Midkiff noted that plaintiff's work was "quite strenuous" and that he "may continue to have some future exacerbations due to this [November 1986] injury." Id. On August 22, 1988, the WCF granted plaintiff a fifteen percent (15%) permanent partial disability award due to his back injury. [Docket No. 21 at 70]. Plaintiff continued to work as a shuttle car operator and receive treatment from Dr. Midkiff. [See Docket No. 21 at 60-62].

Plaintiff sought treatment at the Raleigh Boone Medical Center for a back injury he sustained at work on July 28, 1989 while hanging mine cable. [Docket No. 21 at 441; Docket No. 23 p.6 ¶ 2 ]. Defendants contest that this injury qualified as a "mine accident" under the Plan. [Docket No. 23 p. 29]. Following the July 1989 injury, plaintiff was diagnosed as having a disc herniation at the L5-S1 level. [See Docket No. 21 at 75; Docket No. 23 p.7]. Plaintiff qualified for workers' compensation benefits and was excused from work on September 13, 1989 until March 8, 1990. [See Docket 21 at 444, 453].

Medical records covering the period of December 4, 1987 through August 20, 1990 reveal that plaintiff was continually treated for back pain in the L5-S1 area and was hospitalized in October 1989 for back pain. [See Docket No. 21 at 53-77 ]. Dr. Henry Hills, an orthopedic surgeon, noted that plaintiff would benefit from vocational re-training because he did not feel that plaintiff could continue to perform the heavy work required by his job in the mine. [See Docket No. 21 at 69]. Plaintiff was treated with traction, heat, and physical therapy. [See Docket No. 21 at 75]. In January

3

of 1990, Dr. Hills opined to the WCF that plaintiff was unable to work due to his substantial back injury. [Docket No. 21 at 74].

The record does not reveal whether plaintiff received medical treatment for his back injury between September 1990 and August 1995. On February 11, 1991, however, the WCF granted plaintiff a five percent (5%) permanent partial disability award. [Docket No. 21 at 456]. In October 1994, Peabody Coal Mine Company was sold to Pine Ridge Coal Company, and plaintiff continued his employment with Pine Ridge Coal [Docket No. 21 at 38].

In September 1995, an injury report reflects that plaintiff sustained a "strain, sprain (other than a hernia") on September 15, 1995 while performing work in the mines. [Docket No. 21 at 379]. The record does not reveal the details of this injury. In January 1996, Dr. Johnny Dye, a neurologist, treated plaintiff in relation to his 1989 back injury relative to his disc herniation at the L5-S1 level and noted that, at the time of treatment, plaintiff was currently on temporary disability for a period of six months. [Docket No. 21 at 458-59]. Dr. Dye noted that plaintiff suffered from "[c]hronic lower back pain strain with lumbar radiculopathy, right worse than left" and "[s]tatus post lumbar laminectomy for disc herniation of the L5-S1 level." [Docket No. 21 at 459; Docket No. 23 p.8 ¶ 4]. In November 1995, plaintiff ceased working for the Pine Ridge Coal Company. In February 1996, plaintiff began working for a non-signatory employer, the Independence Coal Company. [See Docket No. 21 at 350]. The record does not reveal whether plaintiff sought medical treatment from February 1996 through February 1999.

Medical records covering the period of March 18, 1999 to April 5, 2001 indicate that plaintiff's physician, Dr. Michael Kostenko, treated plaintiff for complaints of back pain. Dr. Kostenko reported that plaintiff's prior disc surgery could have caused scar tissue or degenerative

conditions causing a great deal of his symptoms to return. [See Docket No. 21 at 183-84; 34-40]. Dr. Kostenko reported on January 6, 2000, that plaintiff's "symptomatology [was] suggestive of progression of his original compensable injury." [Docket No. 106].

On April 5, 2000, while working as a shuttle car operator in the Independence Coal Mine, plaintiff struck a large hole and sustained an injury to his back. On April 6, 2000, Dr. Michael Kostenko diagnosed plaintiff with lumbar disc syndrome with lower extremity symptomatology, lumbar facet with nerve root irritation, lumbar strain, lumbosacral strain, and sacrococcygeal ligaments to the right. [Docket No. 21 at 107]. Dr. Kostenko ordered an MRI of plaintiff's spine, which revealed a disc herniation at L5-S1 level with compression of the right nerve root. [See Docket No. 21 at 109]. Plaintiff returned to the work in the mines in November 2000, but ceased working after two weeks due to back pain.

On February 7, 2001, plaintiff applied for Social Security Disability Insurance, indicating that he had been disabled since the April 5, 2000 injury. [See Docket No. 21 at 300]. On February 26, 2001, pursuant to WCF policy, Dr. Ramanathan Padmanaban, an orthopedic surgeon, performed an independent evaluation of plaintiff's medical conditions. Dr. Padmanaban diagnosed plaintiff with "lumbosacral strain with degenerative changes of the disc and herniated disc over the previously operated L5-S1 disc by Dr. Amores." [Docket No. 21 at 161]. It is uncontested that plaintiff's surgery with Dr. Amores was performed to treat plaintiff's 1986 injury. [See Docket No. 21 at 48, 63].

On June 24, 2002, the Social Security Administration found that plaintiff was entitled to an award of Social Security Disability Insurance benefits ("SSDI"). The Administrative Law Judge found that plaintiff's total disability was ". . . directly related to injuries he acquired while working

in coal mines over a lengthy period, including the injury which occurred in November 1986." [Docket No. 21 at 394].

On July 15, 2002, plaintiff applied for disability benefits with the 1974 Pension Trust. Plaintiff requested benefits based on his 1986 injury and his April 2000 injury. [Docket No. 23 p.19 ¶ 2]. The trustees denied plaintiff's application for benefits on February 27, 2003 because plaintiff had failed to establish a causal connection between his 1986 injury and his total disability and further concluding that plaintiff's total disability was caused by the April 2000 injury. [Docket No. 21 at 363-370].

On May 16, 2003, plaintiff appealed the trustees' denial. [Docket No. 21 at 29-33]. Pursuant to this appeal, plaintiff submitted a letter from his treating physician, Dr. Kostenko. Dr. Kostenko's letter stated that, in his medical opinion, plaintiff's "last injury while working at a non-covered, non-union mine was an extension, or exacerbation, of the original 1986 injury." [Docket No. 21 at 35]. On August 26, 2003, the trustees denied plaintiff's application for benefits, reiterating their finding that plaintiff had failed to establish a causal link between his 1986 injury and his total disability. [Docket No. 21 at 355]. The trustees' decision stated that although Dr. Kostenko's letter and the SSDI award attributed plaintiff's total disability to the 1986 mine accident, "the responsibility of determining if an applicant's disability is causally related to a mine accident rests with the Plan Trustees." [Docket No. 21 at 362]. Plaintiff's appeal was examined and signed by Martha Harnett, R.N., a Disability Pension Analyst. Id.

On February 9, 2005, plaintiff, through retained counsel, requested that the trustees reconsider their August 26, 2003 denial and submitted as additional evidence a letter from Dr.

6

Clifford H. Carlson. [Docket No. 21 at 10]. Dr. Carson, a physiatrist[3], opined that plaintiff was disabled as a result of the November 10, 1986 injury. Specifically, Dr. Carson stated:

> It appears that [plaintiff] is suffering from chronic lumbosacral spine sprain/strain syndrome with degenerative disease which has been aggravated by a number of injuries in the mines. In fact it appears that there are more than 5 such injuries and that he was approaching the point to which he was soon to have to cease work without the injury or before the injury of April 5, 2000. While he suffers from chronic right L5 radiculopathy and this is related to the injury of April 5, 2000 as he had [an] MRI at that time, indicating [a] herniated disc at that time, *he had [a] herniated disc at that level and to the right in 1987* and again it appears that we a[re] dealing with continued progression of earlier disease.
>
> \*\*\*
>
> Therefore, it appears to me that [plaintiff] is disabled resulting from the injury of November 10, 1986 and prior injuries and subsequent progression of these problems due to his work for many years.

[Docket No. 21 at 18-19] (emphasis added). Dr. Carson was also persuaded by Dr. Hill's 1990 letter to the WCF, written ten years before plaintiff's April 2000 injury, where he opined that plaintiff could not continue to perform the heavy work required of his job in the mines due to his back condition. [See Docket No. 21 at 18, 74]. On May 5, 2005, the trustees denied plaintiff's request for reconsideration, concluding that plaintiff had failed to establish that his disability was due to the 1986 mining accident [Docket No. 21 at 1, 9] and attributing plaintiff's total disability to plaintiff's non-signatory injury in April 2000. [Docket No. 21 at 5].

Plaintiff filed this civil action on May 23, 2005, challenging the trustees' denial of his application for disability benefits under ERISA. [Docket No. 1]. On August 25, 2005, this action was remanded at the request of the parties for further development of the administrative record.

---

[3] A physiatrist is a physician specializing in physical medicine and rehabilitation. Available at http://www.aapmr.org/condtreat/what.htm.

[Docket No. 13]. The Plan subsequently agreed to conduct an additional evaluation of the medical evidence. On January 10, 2006, the Plan once again denied plaintiff's application for disability benefits, finding that "[t]he medical evidence indicate[s] that the April 5, 2000 non-signatory mine accident was the cause of [plaintiff's] disability as defined by Social Security." [Docket No. 21 at 497]. On June 29, 2006, plaintiff filed a motion to re-open this case, which was granted on July 5, 2006. [Docket No. 16]. Before the Court are the parties' cross-motions for summary judgment.

## II. STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that a court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When parties file cross-motions for summary judgment, the trial court must consider each motion separately and view the facts relevant to each in the light most favorable to the nonmoving party. Mellen v. Brunting, 327 F.3d 355, 363 (4th Cir. 2003). Each moving party bears the burden of showing that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. Id. The nonmoving party must satisfy their burden of proof by offering more than a mere "scintilla of evidence" in support of their position. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

### III.  ANALYSIS

**A.  Applicable Standard of Review - Denial of Benefits under ERISA**

"It is well established that a court reviewing the denial of disability benefits under ERISA initially must decide whether a benefit plan's language grants the administrator or fiduciary discretion to determine the claimant's eligibility for benefits, and if so, whether the administrator acted within the scope of that discretion."  Gallagher v. Reliance Standard Life Ins. Co., 305 F.3d 264, 268 (4th Cir. 2002).  "Where discretion is conferred upon the trustee with respect to the exercise of a power, its exercise is not subject to control by the court except to prevent an abuse by the trustee of his discretion."  Firestone Tire and Rubber Co. v. Burch, 489 U.S. 101, 111 (1989) (quoting Restatement (Second) of Trusts § 187 (1959)).  The parties agree that the Plan contains discretionary language.  [Docket No. 19 p.2 ¶ 1; Docket No. 23 p.22 ¶ 2]; see Hale v. Trs. of United Mine Workers of Am.  Health & Ret. Funds, 23 F.3d 899, 901 (4th Cir. 1994) (Court of Appeals for the Fourth Circuit has consistently held that the language of the UMWA 1974 Pension Plan [the Plan involved here] expressly confers discretionary authority upon trustees).

"In cases in which the ERISA plan vests the plan administrator with discretionary authority to construe the terms of the plan, we review the administrator's benefits determinations for an abuse of that discretion."  Evans v. Met. Life Ins. Co., 358 F.3d 307, 310 (4th Cir. 2004).  Under this deferential standard, the trial court must not disturb the administrator's decision if it is reasonable, even if the Court would have come to a different conclusion independently.  Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan, 201 F.3d 335, 341 (4th Cir. 2000).  A plan administrator's determination is reasonable if it is the product of a deliberate and principled

9

reasoning process and is supported by substantial evidence. Brogan v. Holland, 105 F.3d 158, 161 (4th Cir. 1997).

However, even when a plan confers discretion on the plan administrator to construe the meaning of the plan's terms, the plan administrator is "not free to alter the terms of the plan or to construe unambiguous terms other than as written." Colucci v. Agfa Corp. Severance Pay Plan, 431 F.3d 170, 176 (4th Cir. 2005). If a denial of benefits is contrary to the clear terms of the plan, the plan administrator's determination "will constitute an abuse of discretion." Lockhart v. United Mine Workers of Am. 1974 Pension Trust, 5 F.3d 74, 78 (4th Cir. 1993). "[T]he dispositive principle remains . . . that where plan fiduciaries have offered a reasonable interpretation of disputed provisions, 'courts may not replace [it] with an interpretation of their own.'" Hale, 23 F.3d at 900 (quoting De Nobel v. Vitro Group, 885 F.2d 1180, 1188 (4th Cir. 1989)). The Court's review of the Plan's decision to deny benefits is limited to the evidence contained in the administrative record. Id.

**B. Defendants' Motion for Summary Judgment**

Defendants argue that the trustees' decision to deny benefits was not an abuse of discretion because the sole cause of plaintiff's disability was a mine accident that occurred on April 5, 2000, while plaintiff was working at a non-signatory mine.[4] The 1974 Plan states, in pertinent part:

> A Participant who (a) has at least 10 years of signatory service prior to retirement, and (b) becomes totally disabled as a result of a mine accident ... shall, upon retirement ... be eligible for a pension while so disabled. A Participant shall be considered to be totally disabled only if by reason of such

---

[4] If plaintiff's total disability was caused by an accident that occurred in a mine that was not a signatory to the United Mine Workers of America 1974 Pension and Trust Plan, defendants are not obligated to provide disability benefits.

10

>accident such Participant is subsequently determined to be eligible for Social
>Security Disability Insurance Benefits. . . .

1974 Pension Plan, Art. II pt. C. [Docket No. 22 Ex. B p.13].[5]  Pursuant to the Plan, a plaintiff must establish three criteria to secure benefits:  1) he must be totally disabled, as evidenced by a SSDI award; 2) he must have been injured in a mine accident; and 3) he must demonstrate that his disability is a result of a mine accident.  See Harris v. Holland, 87 F. App'x 851, 857 (4th Cir. 2004).  The parties agree that the first two elements of this three part test are satisfied, i.e., 1) plaintiff is disabled, as evidenced by a SSDI award; and 2) the 1986 mine incident qualifies as a mine accident.  Defendants contest the third criterion, however, and assert that the medical evidence contained in the administrative record fails to establish a causal link between the 1986 mine accident and plaintiff's total disability.  Defendants assert that plaintiff's ability to return to work after the 1986 accident, and his decision to continue working in the mines over the next thirteen years negates his position that the 1986 injury caused his total disability.

When determining whether a plaintiff's disability is caused by a mine accident, the Fourth Circuit has rejected the use of a strict causation standard.  Specifically, "the proper analysis . . . is not whether the mine accident was the sole cause of the disability, or even the most significant cause thereof, but whether the mine accident was a proximate cause of the disability." Harris, 87 F. App'x at 857 (quoting Robertson v. Connors, 848 F.2d 472, 475 (4th Cir. 1988)).  As Judge Sprouse explained:

>The only reasonable interpretation of the requirement that total disability be
>'the result of a mine accident,' therefore, is that it requires total disability to

---

[5] Plaintiff was employed in a classified signatory mine from June 1975 until November 1995 [Docket No. 21 at 413, 422] and thus qualifies as a participant with at least ten years of experience.

>have been proximately caused by the mine accident. That is, if the plaintiff was injured in a mine accident and that injury, whether in combination with a previous *or subsequent condition*, is *substantially responsible* for plaintiff's inability to perform his job . . . then his total disability results from a mine accident.

Robertson, 848 F.2d at 475 (emphasis added). Thus, under Robertson, it is not necessary for plaintiff to demonstrate that his 1986 mine accident caused his immediate and total disability. Put simply, it is sufficient for him to demonstrate that his total disability was substantially caused by the 1986 mine accident. Thus, plaintiff can establish the requisite causation without being required to disprove that his April 5, 2000 injury contributed to his total disability. See 848 F.2d at 476; Boyd v. Trs. of the United Mine Workers Health & Retirement Funds, 873 F.2d 57, 59 (4th Cir. 1988).

The fact that plaintiff returned to work following the 1986 accident does not necessarily indicate that the 1986 accident was not substantially responsible for his total disability. See Harris, 87 F. App'x at 857. In Harris v. Holland, a strikingly similar case, the Fourth Circuit held that a plaintiff was entitled to disability benefits under the 1974 Plan despite his decision to continue working in the mines following an a mine accident that occurred ten years before he was found totally disabled pursuant to a SSDI award. 87 F. App'x at 857. In that case, Harris sustained an injury to his L5-S1 disc while working in a signatory mine. Id. at 853. He received treatment for his injury, and returned to work. Harris received treatment intermittently for his back injury over the next ten years, with subsequent periods of disability caused by aggravation of his original injury, and two subsequent injuries, which were products of his "degenerative disc disease" that occurred in his lower back, particular to the level L5-S1 area. Id.

In February 1997, Harris ceased working in the mines. A few months later, he injured his back while pushing a lawnmower. Harris was treated for the lawnmower injury, whereby an MRI

ordered by his treating physician revealed that he was suffering from a disc protrusion at the L5-S1 level. Id. at 854. After receiving an SSDI award, Harris applied for benefits under the 1974 Plan, asserting that his total disability was caused by a 1987 mine injury. The trustees denied his application for benefits, concluding that the lawnmower injury was solely responsible for his total disability and that he had failed to establish a casual connection between his total disability and the 1987 injury. Id. at 856.

The Fourth Circuit held that the trustees' decision to deny Harris' application for benefits was an abuse of their discretion, stating that "the proper inquiry is whether the accident was substantially responsible for his disability, not whether it was last in chronological order." Id. The Fourth Circuit's decision in Robertson "supports the proposition that a mine accident can result in the total disability of a miner, even though combined with a previous or *subsequent* injury." 87 F. App'x at 857 (emphasis added). The Fourth Circuit concluded that it was illogical for the trustees to conclude that the 1987 injury was not the substantial cause of his total disability, stating "the first Doctor who saw claimant found that he had, according to an MRI, a disc problem at L5-S1, and the last doctor who treated claimant found he had a disc problem at L5-S1. . . . It was thus illogical to conclude that Harris's 1987 traumatic low[er] back injury, for which he was treated . . . was not the proximate cause of his injury." Id. at 858.

The Court finds the very similar facts and holding in the Harris case persuasive. Here, the fact that plaintiff was injured in a non-signatory mine in April 2000 does not preclude plaintiff from receiving disability benefits under the Plan. It is uncontested that plaintiff received surgery to treat a herniated L5-S1 disc due to the 1986 mine accident [See Docket No. 21 at 51]. It is also uncontested that in 1989 there was a diagnosis that plaintiff was suffering from a disc herniation at

13

the L5-S1 level. [See Docket No. 21 at 75]. It is further undisputed that an MRI taken of plaintiff's spine following the April 5, 2000 non-signatory mine accident revealed a herniated L5-S1 disc. [Docket No. 21 at 109; 161, 192]. In addition, following the April 2000 injury, Dr. Padmanaban diagnosed plaintiff with "lumbosacral strain with degenerative changes of the disc and herniated disc over the previously operated L5-S1 disc by Dr. Amores." [Docket No. 21 at 161]. It is uncontested that plaintiff's surgery with Dr. Amores was performed to treat an injury caused by plaintiff's 1986 injury. [Docket No. 21 at 48, 63].

Plaintiff's return to work on several occasions following treatment for his degenerative back condition does not refute his position that his total disability was substantially caused by the 1986 injury. Plaintiff submitted evidence from several treating physicians attributing his total disability to the 1986 mine accident. It is not insignificant to this Court's analysis that the trustees disregarded the opinions of Drs. Kostenko and Saladanha (treating physicians) and the opinions of Drs. Hills, Padmanaban and Carlson (evaluating physicians). The Court cannot mandate that the Plan accord special weight to the opinion of claimant's treating physicians, but the Plan is not entitled to "arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." Black & Decker Disability Plan v. Nord, 538 U.S. 822, 824 (2003). Although this Court cannot "impose on [the trustees] a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation," this Court is obliged to ensure that the trustees "provide adequate notice in writing to any participant or beneficiary whose claim for benefits . . . has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant." Id. at 827 (quoting 29 U.S.C. § 1133(1)); see Harris, 87 F. App'x at 857.

Here, the trustees simply decided to ignore the opinions reported in the letters of Drs. Kostenko and Carson, and failed to provide any substantive basis for doing so. Dr. Kostenko treated the plaintiff for several years, and thus his opinion presumably would be accorded at least some weight by the trustees. It is clear, however, from the trustees' decisions that they gave no meaningful consideration to Dr. Kostenko or Dr. Carson's opinions. In addition, many of the physicians' opinions and treatment notes in the record attribute plaintiff's degenerative back condition to the L5-S1 disc injury, which was first documented following the 1986 injury. [See Docket No. 21 at 18- 19, 34-35, 106, 160-61]. The Court has not been directed to any physician's opinion in the record which indicates otherwise. Based on the evidence of record, this Court finds that plaintiff's total disability was substantially caused by the 1986 mine accident. The trustees' decision to deny plaintiff's application for disability benefits is the result of an inaccurate application of the proximate cause standard under Robertson and Harris, and thus was an abuse of their discretion. Robertson, 848 F.2d at 475; Harris, 87 F. App'x at 857.

Because this Court finds that plaintiff's total disability was substantially caused by a qualifying mine accident, the Court need not address defendants' second argument that plaintiff's 1989 injury does not qualify as a mine accident under the Plan.

For the reasons stated herein, defendants' motion for summary judgment is **DENIED**.

### C. Plaintiff's Motion for Summary Judgment

Plaintiff asserts that he is entitled to judgment as a matter of law because he has satisfied all three eligibility requirements to receive disability benefits under the Plan. Harris, 87 F. App'x at 857. As previously stated, the parties contest only the third eligibility criterion under the Plan, specifically, whether plaintiff has demonstrated a sufficient causal link between the 1986 mine accident and plaintiff's total disability.

Because this Court finds that the trustees' decision to deny benefits was based on an erroneous application of the proximate cause standard, and thus their decision to deny benefits was not supported by substantial evidence of record, The Court concludes that plaintiff has satisfied the third criterion under the Plan. Thus, plaintiffs are entitled to judgment as a matter of law and the Court therefore **GRANTS** plaintiff's motion for summary judgment.

## IV.  CONCLUSION

For the reasons stated herein, plaintiff's motion for summary judgment [Docket No. 18] is **GRANTED** and defendants' motion for summary judgment [Docket No. 22] is **DENIED**.  The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: March 30, 2007

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE